UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CANDICE S.
o/b/o W.A.,

                        Plaintiff,

v.                                                  CASE NO. 1:24-cv-00311
                                                    (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 9, 13), as well as Plaintiff's Reply (Doc. 14). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 9) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 13) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.      RELEVANT BACKGROUND

### A.      Procedural Background

On April 23, 2021, an application for supplemental security income was filed by Plaintiff[1] on behalf of W.A., a child under age 18, with an alleged disability onset date of

---

[1] Plaintiff is W.A.'s mother.

August 27, 2013.[2]  (*See* Tr. 191-201; 69-70.)  The application was denied initially and on reconsideration.  (Tr. 80, 81.)  Thereafter, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).  (*See* Tr. 110-26.)  An initial telephonic hearing was held before ALJ Alexander Borre on November 21, 2022, but it was adjourned so that Plaintiff could retain legal counsel. (Tr. 60-68.)  A second telephonic hearing was then held on March 28, 2023 before ALJ Borre.  (Tr. 31-59.)  On May 9, 2023, the ALJ issued an unfavorable decision, finding that W.A. was not disabled.  (Tr. 14-30.)  The Appeals Council denied the request for review, (Tr. 1-6), and Plaintiff timely appealed to this Court.

## B.    Factual Background

W.A. was born on August 27, 2013, (Tr. 37), and alleged the following severe impairments: attention deficit hyperactivity disorder (ADHD), oppositional defiance disorder (ODD), post-traumatic stress disorder (PTSD), and hypothyroidism. (Tr. 70.)

At the time of the hearing, W.A. was in fourth grade. (Tr. 37.)  She indicated that PE and math were her favorite subjects, and writing was her least favorite subject.  (Tr. 38.)  Plaintiff explained that W.A. was in a regular classroom at school and was beginning under a 504 Plan.  (Tr. 44-45.)  Plaintiff described that the 504 Plan allowed W.A. to leave the room to calm herself when necessary, provided her with extra bathroom breaks, and permitted her to visit the counselor when needed.  (Tr. 45.)  Plaintiff explained that she had been asking for the 504 Plan since kindergarten because W.A. would run out of the classroom and behave impulsively.  (Tr. 45-46.)

Plaintiff testified that W.A. had been diagnosed with ADHD and PTSD and noted that "anything" can trigger her. (Tr. 45.)  Plaintiff described that W.A. sometimes is

---

[2] The alleged disability onset date was amended at the hearing to coincide with the application date. (Tr. 36-37.)

"triggered for days" and may "crash for three days" over a simple question that triggers her in some way. (*Id.*)  Alternatively, W.A. may experience a "manic high" and be "all over the place." (*Id.*)  Plaintiff explained that W.A.'s impulsive behavior included running out of classrooms and breaking things, such as glasses, crayons, pencils, and toys, although W.A. primarily breaks things at home, not as much at school, except she does tear up papers at school. (Tr. 49-50.)  W.A. may also rip the heads off her stuffed animals or go to the bathroom every ten minutes to play in the water.  (Tr. 54.)  Plaintiff testified that the doctors would not diagnose W.A. with bipolar due to her age, but she confirmed she did observe periods of highs and lows associated with bipolar. (Tr. 51.)  Plaintiff noted that, when W.A. was feeling more "up," she would be more impulsive and argue more.  (*Id.*)

Plaintiff testified about W.A.'s urinary accidents.  She noted that it is an ongoing issue, and the doctors are not sure exactly why it happens. (Tr. 48.)  Plaintiff indicated they hypothesize it might be the result of anxiety, PTSD, and/or possible severe constipation.  (*Id.*)  This difficulty is the reason W.A. is permitted additional bathroom breaks at school.  (Tr. 49.)  Plaintiff indicated that W.A. has an accident generally daily, sometimes three times a day, mostly at home.  (Tr. 55.)  Recent in time to the hearing, W.A. was triggered by mention of her biological father, which caused her to have nightmares at least once a week of her biological father killing her and her mother and increased the instances of urinary accidents for about a month. (Tr. 56-57.)

Plaintiff noted that W.A. sees a counselor every other week, and has been, since 2018. (Tr. 52.)  She also sees a psychiatrist at least once every three months for medication management or anytime Plaintiff thinks that W.A. needs an adjustment to her medication.  (Tr. 53.)  Plaintiff explained that W.A. was taking several medications,

3

including a mood stabilizer, a medication for ADHD, and a thyroid medication.  (Tr. 46-47.)  Plaintiff denied any side effects resulting from the medications. (Tr. 47.)

W.A. testified about her social habits.  She described that she had brothers and sisters, as well as a best friend, with whom she often played.  (Tr. 39-40.)  Plaintiff also explained that W.A. does not always get along well with her older sister, that they fight sometimes, especially when the older sister brings up W.A.'s dad, which is a trigger for W.A.  (Tr. 48.)  W.A. also testified that she previously participated in baseball and would like to become a cheerleader.  (Tr. 39.)  When she has free time, W.A. indicated that she likes to color, work in her math books, or read.  (Tr. 40.)  Plaintiff testified that W.A. did have some chores.  She indicated that W.A. was responsible for cleaning her area where she eats, as that is all Plaintiff believes she can handle. (Tr. 47.)  Plaintiff affirmed that W.A. tries, and wants to try to help, but does not always perform the chores correctly, which is why she is limited.  (*Id.*)  Plaintiff described that W.A. has trouble sitting and focusing during a movie.  (Tr. 53.)  She also indicated that W.A. is very sensitive to movie content.  (Tr. 54.)

## C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant was born on August 27, 2013. Therefore, she was a school-age child on April 23, 2021, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)). (Tr. 18.)

2. The claimant has not engaged in substantial gainful activity since April 23, 2021, the application date (20 CFR 416.924(b) and 416.971 et seq.). (Tr. 18.)

3. The claimant has the following severe impairments: adjustment disorder with disturbance of conduct, oppositional defiant disorder (ODD), attention deficit

4

hyperactivity disorder, combined type (ADHD), unspecified mood disorder (20 CFR 416.924(c)). (Tr. 18.)

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926) (Tr. 18.)

5.  The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a). (Tr. 19.)

6.  The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since April 23, 2021, the date the application was filed (20 CFR 416.924(a)). (Tr. 26.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by

evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B.    Standard to Determine Disability**

Because the claimant is a child, a particularized, three-step sequential analysis is used to determine whether she is disabled. *See* 20 C.F.R. § 416.924.  First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If so, the claimant is not disabled. At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *See* 20 C.F.R. § 416.924(c).  If not, the analysis concludes with a finding of "not disabled." If the claimant has one or more severe impairments, the ALJ continues to step three.

At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). 20 C.F.R. § 416.924(d). In determining whether an impairment functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).  To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).  A limitation is "marked" when it "interferes seriously" with the child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2). A limitation is "extreme" when it "interferes very

seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

If the child has an impairment that meets, medically equals, or functionally equals the Listings, and the impairment meets the Act's duration requirement, the child is disabled. 20 C.F.R. § 416.924(d).

## III.    ANALYSIS

Plaintiff challenges the ALJ's functional equivalency finding, arguing that the ALJ erred in his finding that W.A. had a less than marked limitation in the domain of attending and completing tasks.  (*See* Doc. 9-1 at 9.)  Plaintiff contends that the ALJ's conclusion is not supported by substantial evidence.  (*See id.* at 11.)

### A.  Evaluation of the Domain of Attending and Completing Tasks

In evaluating a child's abilities in the domain of attending and completing tasks, the ALJ considers how well the child: is able to focus and maintain attention; and begins, carries through, and finishes activities, including the pace at which these activities are performed, as well as the ease with which the child changes them.  *See* 20 C.F.R.§ 416.926a(h).  Children who are of school age, as W.A. was during the relevant time, should be able to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments.  *See* 20 C.F.R. § 416.926a(h)(2)(iv).  They should also be able to concentrate on details and not make careless mistakes in their work (beyond what would be expected in other children the same age who do not have impairments); change activities or routines without distracting themselves or others; and stay on task and in place when appropriate. *See id.*  They should be able to maintain attention well enough

7

to participate in group sports, read independently, and complete family chores. *See id.*

They should also be able to complete a transition task. *See id.*

In evaluating this domain, the ALJ concluded that W.A. had a less than marked

impairment:

> School records and behavioral health progress notes support a finding that the claimant has less than marked impairment in attending and completing tasks (Exhibits 5E, 11E). The claimant did well in second grade (Exhibit 5F). She was rated as having generally no problem to a slight problem attending and completing tasks, with obvious problems organizing her own things or school materials on a daily basis, completing work accurately without mistakes on a weekly basis, and working without distracting herself or others on a daily basis (Id.). The longitudinal behavioral health record documents improvement in the claimant's ADHD symptoms with prescribed medication, consistent with the school records (Exhibits 1F, 6F, 10F). She was able to attend to psychotherapy (Id.).

(Tr. 24.)

## B. The Opinion Evidence

The record contains several opinions as to W.A.'s limitations in the domain of

attending and completing tasks. At both the initial and reconsideration level, the agency

reviewers assigned a less than marked rating to this domain. (*See* Tr. 74, 88.) On

reconsideration, Dr. Stouter noted that "[t]herapy and [treatment] goals focus more on

behavioral issues than on attentional problems." (*See* Tr. 89.)

Consultative examining psychologist Dr. Adam Brownfield found "no evidence of

limitation" in "attending to, following, and understanding age-appropriate directions;

sustaining concentration and completing age-appropriate tasks…." (Tr. 578.)

Dr. Wohltmann, W.A.'s treating psychiatrist, opined that W.A. had a marked

limitation in the domain of attending and completing tasks. (Tr. 878.) This opinion

contained no explanation or support. (*See id.*)

8

Counselor Christine Faust, who had been W.A.'s treating therapist for several years, signed the opinion issued by Dr. Wohltmann, but she also provided a separate narrative. (*See* Tr. 880-81.)  In this narrative, she stated in pertinent part that:

> [W.A.] demonstrates marked impairment in her ability to successfully manage her emotions, keep herself safe, and attend to her environment with focus and care.  Her mood dysregulation presents specifically challenging circumstances, as she experiences both highs and lows with manic and depressive features respectively….[W.A.] is easily distracted and has difficulty focusing on tasks.  She is bothered by certain sensory-related issues that compound her attention issues.  [W.A.] can be very hyperactive with high energy and constantly moving, laughing, or being silly.
>
> [W.A.] has most recently developed significant PTSD symptoms and impairments. Although the sexual abuse she suffered at the hands of her biological father occurred several years ago, [W.A.] has been experiencing increasing impairments and symptoms such as frequent graphic nightmares, enuresis, flash backs at any given time, anxiety attacks, and constant vigilance.

(Tr. 880.)  She also noted that W.A. "has engaged well and consistently" in various forms of therapy but "has not made significant gains." (Tr. 881.)

Additionally, W.A.'s second-grade teacher, Linda Bartlett, evaluated thirteen activities relevant to this domain.  (*See* Tr. 241.)  In ten activities, Mrs. Bartlett concluded that W.A. had "no problem" or "a slight problem" as compared to the functioning of a same-aged child without impairments.  (*See id.*)  In the remaining three activities, including "organizing own things or school materials," "completing work accurately without careless mistakes," or "working without distracting self or others," Mrs. Bartlett assigned "an obvious problem."  (*See id.*)  She noted that W.A. was "independent most of the time but temperamental."  (*See id.*)

9

The ALJ evaluated each of these opinions.  He found the agency reviewers to be partially persuasive, although he concluded that W.A. was markedly limited in the domain of caring for herself.  (Tr. 25.)   With regard to Dr. Brownfield's opinion, the ALJ concluded:

> The opinion of consultative examiner, Adam Brownfield, Ph.D., rendered in July 2021, is partially persuasive (Exhibit 4F). While it is generally consistent with the opinions of the claimant's second grade teacher rendered in June 2021, evidence of the claimant's functioning in the third and fourth grades and the behavioral progress notes better support a finding that she has issues in areas where he found no evidence of limitation. School and medical records better support a finding of less than marked impairment in acquiring and using information, attending and completing tasks, and interacting and relating with others.

(Tr. 25-26.)

He also considered the opinions of Dr. Wohltmann and Counselor Faust, finding each to be partially persuasive:

> The opinion of Virginia Ann Wohltmann, M.D. and Christine E. Faust, LMHC, rendered in February 2023, is partially persuasive (Exhibit 11F). It is not supported by explanation and is not consistent with treatment plan reviews contained in the medical record which state that the claimant had made and sustained significant gains in behavior, mood stability, and self-control across environments and that prescribed medications were effective in minimizing her symptoms (Exhibits 1F, 6F, 10F). They are not consistent with school records which document that she functioned at grade level with tiered intervention (Exhibit 11E). She was successful both academically and behaviorally (Id.).
>
> The narrative opinion prepared by Christine E. Faust, LMHC in in [sic] March 2023, is partially persuasive (Exhibit 12F). Again, the level of symptom severity described here is not consistent with treatment plan reviews and contemporaneously made behavioral health progress notes (Exhibits 1F, 6F, 10F). The level of care the claimant has received (generally quarterly medication management and twice monthly psychotherapy) and tiered intervention at school are not consistent with the listing level severity Ms. Faust has described.

(Tr. 26.)

The ALJ also considered Mrs. Bartlett's opinion:

10

> The opinion of second grade teacher, Linda Bartlett, rendered in June 2021, is generally persuasive (Exhibit 5E). It is generally well supported by explanation and observations of the claimant full school days throughout a full school year (10 months).

(Tr. 25.)

### C. This Court's Analysis

"When assessing a child's ability in each of the six domains, an ALJ considers evidence from all settings, including school records such as grades and aptitude and achievement test scores, evidence from medical and nonmedical sources, and evidence from the child himself, in order to take into account the whole child." *Kristina G. o/b/o M.E.G. v. Comm'r of Soc. Sec.*, 1:23-cv-00904-EAW, 2024 WL 3633355, * 3 (W.D.N.Y. Aug. 2, 2024) (internal quotation marks and citation omitted). "Evidence from teachers or therapists 'cannot establish the existence of a medically determinable impairment,' but their opinions may be used 'to show the severity of the individual's impairment(s) and how it affects the individual's ability to function.'" *White o/b/o T.R.W. v. Berryhill*, No. 17-cv-6367P, 2019 WL 1367382, *3 (W.D.N.Y. Mar. 26, 2019) (quoting Social Security Ruling 06-03P, 2006 WL 2329939, *2 (2006)).

"[A]n ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Nicole A. o/b/o L.S. v. Comm'r of Soc. Sec.*, Case no. 1:22-cv-00343 (JGW), 2024 WL 3228001, *4 (W.D.N.Y. June 28, 2024) (internal citation omitted). *See also Taneisha R. o/b/o N.D.P. v. Comm'r of Soc. Sec.*, 1:23-cv-00098, 2024 WL 1151764, *3 (W.D.N.Y. Mar. 18, 2024). While "[a]n ALJ is not required to explicitly analyze every piece of conflicting evidence in the record…the ALJ cannot pick and choose evidence in the

11

record that supports his conclusions." *Nicole A. o/b/o L.S.*, 2024 WL 3228001, \*4 (internal quotation marks and citation omitted).

Under the substantial evidence standard, though, it is not enough for Plaintiff to "merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position." *Kelinne O. o/b/o K.P.Q. v. Comm'r of Soc. Sec.*, Case No. 5:23-cv-00812, 2024 WL 2027907, \*6 (N.D.N.Y. April 16, 2024) (internal quotation marks and citation omitted).

Having reviewed the record, the Court finds that the ALJ's determination that W.A. experienced a less than marked limitation in the attending and completing tasks domain is supported by substantial evidence.  As the ALJ recognized, the school records and longitudinal medical records reflect that, while W.A. did experience some challenges in this domain, her impairments did not interfere seriously with her ability to independently initiate, sustain, or complete activities within this domain.  Specifically, W.A. has successfully completed each grade and was meeting goals.  Indeed, the most recent school records contain a Multi-Tiered System of Supports (MTSS) tracking document from 2022, which reflected that W.A. was capable and accomplishing most goals through the structured support.  (*See* Tr. 278) (reflecting that she tested second highest in the class on her iReady testing); (Tr. 279) (reflecting test scores demonstrating no further direct phonics instruction is necessary); (Tr. 281) (recognizing that W.A. is capable and at grade level when she puts forth her best effort).

Further, her treatment notes reflect overall that she was managing her impairments well and was generally improving.  Her treatment notes reflect that W.A. experienced "continued" or "clear" improvement (Tr. 620, 632, 636), "maintained progress" (Tr. 624),

12

"was managing well overall across environments" (Tr. 755), was "doing well overall at home since school ended" (Tr. 775), and had "stability overall" (Tr. 884).  Even Counselor Faust reported that W.A. demonstrated consistent progress and overall stability (Tr. 799), emphasizing "significant progress in the past year in regards to behavior, mood stability, and self-control." (Tr. 806.)

Further, as the ALJ noted, her treatment history reflects that her ADHD symptoms have been managed through medication. (Tr. 24.)  Importantly, the mere diagnosis of a condition, which may be marked by certain limitations with focus and concentration, cannot result in an automatic marked limitation as Plaintiff seems to argue.  *See Clark v. Saul*, 444 F. Supp. 3d 607, 623 (S.D.N.Y. 2020) (recognizing that "[T]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.' ") (internal citation omitted).  And the increase in medication to manage the condition is not evidence of disability but rather is routine.  *See Nicole A. o/b/o L.S.*, 2024 WL 3228001, at *5 (noting that "[c]ontrary to plaintiff's portrayal of Adderall dosage increases as somehow indicative of uncontrollable and markedly limiting ADHD, titrating medication with gradual increases is routine.")

The ALJ properly evaluated the opinions provided by Dr. Wohltmann and Counselor Faust. He correctly noted that the opinions were inconsistent with overall record and contained no explanation supporting the conclusions.  (Tr. 26.)  Further, there was other expert opinion evidence that supported the ALJ's conclusion, including Mrs. Bartlett's statement.  Indeed, Mrs. Bartlett's assessment that W.A. had "an obvious problem" with "organizing own things or school materials" and "working without distracting

13

self or others" on a daily basis, as well as "completing work accurately without careless mistakes" on a weekly basis simply does not translate to a marked finding. *See Nicole A. o/b/o L.S.*, 2024 WL 3228001, at *4 ("Regardless of how persuasive the ALJ found the various teacher questionnaires, a teacher opinion that a claimant has some limitations within a domain is not necessarily inconsistent with an ALJ's conclusion that those limitations were 'less than marked.'")(internal quotation marks and citation omitted); *see also Kristina G. o/b/o M.E.G.*, 2024 WL 3633355, at *3 (noting that even "assessments of 'serious' and 'very serious' problems in a domain are not necessarily inconsistent with an ALJ's conclusion that the child's limitations were 'less than marked.'") (internal quotation marks and citations omitted); *Taneisha R. o/b/o N.D.P.*, 2024 WL 1151764, at *5 ("To the extent that Plaintiff argues that the assessments of [teachers] reflecting that [child] has a 'serious problem' in certain areas in this domain is inconsistent with a 'less than marked' determination by the ALJ, this contention is without merit.") (internal quotation marks and citation omitted).

While Plaintiff contends that the ALJ erred by relying on evidence that predated the relevant period, the Court disagrees. The ALJ thoroughly detailed W.A.'s history, which included treatment received outside the relevant period, which is appropriate. However, he also expressly relied on evidence during the relevant period in evaluating this domain. For example, he explicitly acknowledged school records, including Mrs. Bartlett's questionnaire, which is dated in June 2021, as well as the MTSS tracking document from 2022. (*See* Tr. 24) (citing Tr. 239-46; 277-91.) As noted above, these documents are consistent with the ALJ's conclusion that W.A. experienced a less than marked limitation in this domain.

While the record does reflect that W.A. experienced some continued difficulties, (*see* Tr. 735) (reflecting that W.A. continued to have nightmares regarding violence against her and her mother by her biological father), it also reflected that she was doing well generally, (*see* Tr. 882) (recognizing that W.A. was "doing well overall").  It is clear from the analysis that the ALJ considered all evidence in the record and, as he was required to do, resolved conflicts in the evidence.  *See Taneisha R. o/b/o N.D.P.*, 2024 WL 1151764, at *6 ("While Plaintiff argues that evidence in the record supported a marked limitation in this domain, '[t]he ALJ is permitted to resolve such evidentiary conflicts.'") (internal quotation marks and citations omitted).   The ALJ explicitly cited medical evidence, testimony, education records, and the opinion evidence pertinent to this domain throughout his decision.  (*See* Tr. 24-25.)

In fact, the Court notes that Plaintiff's sole argument against the ALJ's finding of less than marked limitations in the attending and completing tasks is premised on the ALJ's evaluation of two medical opinions and the questionnaire of W.A.'s second grade teacher. Plaintiff contends, in essence, that the ALJ should have accepted these opinions and given them more weight than he did.  (*See* Doc. 9-1 at 19-20.)  But "[i]t is not the function of this Court to re-weigh evidence or consider *de novo* whether [W.A.] is disabled." *Taneisha R. o/b/o N.D.P.*, 2024 WL 1151764, at *3.  *See also Kelinne O. o/b/o K.P.Q.*, 2024 WL 2027907, at *6. To the contrary, "[a]bsent legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Taneisha R. o/b/o N.D.P.,* 2024 WL 1151764, at *3 (internal quotation marks and citation omitted).

15

Although Plaintiff disagrees with the ALJ's conclusion in this domain, the Court finds that the ALJ "properly referenced the evidence on both sides of the issue" and his conclusion that W.A. had less than a marked limitation in this domain is supported by substantial evidence. *See White o/b/o T.R.W.*, 2019 WL 1367382, at *7. While Plaintiff may argue there was sufficient evidence to support another finding, that argument does not support remand. The law is clear that the question is whether there is sufficient evidence to support the ALJ's decision—not whether there is evidence that may support another conclusion. *See McIntyre*, 758 F.3d at 149 (recognizing that even if the evidence may support another rational interpretation, the Commissioner's determination must be upheld).

The Court, having reviewed the record in its entirety, finds there is substantial evidence supporting ALJ Borre's evaluation of the domain of attending and completing tasks, leaving no basis for remand.

## IV.   CONCLUSION

**ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 9) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 13) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: March 23, 2026                         J. Gregory Wehrman
Rochester, New York                          HON. J. Gregory Wehrman
                                             United States Magistrate Judge

16